JEROME SCHREIBSTEIN (SBN: 154051)
LAW OFFICE OF JEROME SCHREIBSTEIN
Embarcadero Center West
275 Battery Street, Eighteenth Floor
San Francisco, CA 94111
Telephone:  (415) 875-3355
Facsimile:   (415) 358-9885

Attorneys for Defendant
BAYER CORPORATION DISABILITY PLANS
(*erroneously sued as BAYER CORPORATION DISABILITY PLAN*)

LAURENCE F. PADWAY (SBN 89314)
Law Offices of Laurence F. Padway
1516 Oak Street, Suite 109
Alameda, CA 94501
Telephone:  (510) 814-6100
Facsimile:   (510) 814-0650

Attorneys for Plaintiff ROSALIE MOOS-HOLLING

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALIE MOOS-HOLLING, | CASE NO. C-07-06240 SI |
| Plaintiff, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |
| v. | Date:  March 28, 2008 |
| BAYER CORPORATION DISABILITY PLAN, | Time:  2:30 p.m. |
| | Place:  Courtroom 10, 19th Floor |
| Defendant. | |

    Defendant Bayer Corporation Disability Plans (sued incorrectly herein as "BAYER CORPORATION DISABILITY PLAN") (herein, "Defendant" or the "Plan") and plaintiff Rosalie Moos-Holling (herein, "Plaintiff") hereby submit this as their Joint Case Management Conference Statement.

-1-

JOINT CASE MANAGEMENT CONFERENCE STATEMENT (CASE NO. C-07-06240 SI)

1. **Brief Description of Events Underlying the Action:**

Plaintiff was formerly employed by Bayer Corporation ("Bayer")[1] at its Berkeley, California site which is concerned with the research, development and manufacture of pharmaceutical products, principally its Kogenate FS, which is used in the treatment of hemophilia. Plaintiff began her Bayer employment on January 10, 2000 and most recently actively worked at Bayer as a QA Production Document Release Administrator – a sedentary quality assurance position involved in the review of documentation and product release.

In September, 2002, Plaintiff evidently fainted at her computer for reasons which would never become entirely clear. Upon regaining consciousness, she drove herself to a local emergency room for assessment. She would never again return to work at Bayer.

Plaintiff applied for and was paid first Short Term Disability benefits and later Long Term Disability benefits. Bayer, as the Plan administrator, contracts out, from time to time, initial claim review services to certain third parties, Broadspire, in the case of Plaintiff's claim. On November 14, 2005, Broadspire informed Plaintiff that her LTD benefits under the Plan were to be terminated on November 30, 2005 because she no longer met the Plan definition of "totally disabled."[2] This was based on a complete review of Plaintiff's file including the reports of her treating physicians and the results of an Independent Medical Examination (IME) and Functional Capacity Evaluation (FCE) wherein it was concluded that Plaintiff could return to her prior position and would also be qualified to perform like positions for which she was already or could become readily qualified.

Plaintiff appealed the denial of benefits to Bayer's ERISA Review Committee (the "Committee"). The Committee reviewed the entire body of Plaintiff's claim including the many reports of her own physicians and those retained by Broadspire, as well as other associated file

---

[1] Bayer Corporation is not a party to this action. The Berkeley site at which Plaintiff worked is now operated by Bayer HealthCare LLC, a wholly owned subsidiary of Bayer Corporation and, also, not a party to these proceedings.

[2] In general, under the Plan, "totally disabled" means "(A) for the first six months after [a claimant's] Short Term Disability (STD) benefits end [claimant is] unable to perform the essential duties of [claimant's] regular occupation [and] (B) beginning six months after [claimant's] LTD benefits begin, [claimant] must be unable to work at any job for which [claimant is] or could become qualified by education, training or experience."

-2-

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT (CASE NO. C-07-06240 SI)**

1  documentation.  In addition, the Committee retained another physician, Dr. Beth Cohen, to
2  conduct a peer review of the file to assess the eligibility issue.  Plaintiff submitted no additional
3  medical documentation on her appeal, instead principally relying upon a Social Security
4  disability award made in her favor.  In ultimately upholding the cessation of benefits, the
5  Committee carefully detailed to Plaintiff that (a) its findings were based on the reports of her
6  own physicians, the peer reviews as contracted for by Broadspire and the Committee, the FCE,
7  the IME, and (b) while a Social Security finding was relevant, the standards of the Plan are what
8  control and the Social Security determination was effective only as of a certain date.  In short, it
9  was concluded and relayed to Plaintiff:

> Based on the medical information provided by Dr. Richard Rubenstein [the IME physician] and Dr. Beth Cohen [the peer review physician retained by the Committee], the Committee determined that there was no credible, medical evidence of any medical condition that would preclude you from performing the essential duties of your regular occupation as a QA Production Document Release Administrator as of November 30, 2005.  Dr. Rubenstein noted that you have no evidence of weakness, sensory loss, reflex asymmetry, signs of nerve entrapment, or other pathology to explain the abnormal posture in which you hold your right arm or your self-reported hypersensitivity of the right thumb and index finger.  Dr. Rubenstein determined that you are capable of full-time employment in your own or any occupation and noted that you, in fact, are already probing the job market.  Similarly, Dr. Cohen found no medical evidence of a condition that would preclude you from performing your own occupation.  Accordingly, the Committee upheld the cessation of your disability benefits as of November 30, 2005.

Plaintiff contends that the denial letter did not meet the requirements of <u>Saffon v. Wells Fargo and Co. Long Term Disability Plan</u>, 511 Fed. 3d 12086 (9th Cir., 2008) because it did tell her in plain English what she needed to do to qualify for benefits, and that the Trustee is conflicted because Bayer adds money to the plan from its general assets as needed to pay claims.

**2.    The Principal Factual Issues which the Parties Dispute:**

Whether, under the applicable deferential standard of review and the governing terms of the Plan, the Committee acted lawfully in upholding the cessation of Plaintiff's

-3-

JOINT CASE MANAGEMENT CONFERENCE STATEMENT (CASE NO. C-07-06240 SI)

LTD benefits.

**3.     The Principal Legal Issues which the Parties Dispute:**

a.     Whether the abuse of discretion or *de novo* standard of review should apply to this Court's review of the challenged benefits decision.

b.     Whether, under the applicable standard of review and governing terms of the Plan, Bayer acted properly in upholding the termination of Plaintiff's LTD benefits.

**4.     Parties which Have not Been Served and the Reasons:**

None.

**5.     Additional Parties which the Below-specified Parties Intend to Join and the Intended Time-frame for Such Joinder:**

None.

**6.     Alternative Dispute Resolution:**

The parties are amenable to participating in the Court's Early Neutral Evaluation (ENE) program.

**7.     Initial Disclosures:**

Because this is an ERISA action and the matter is principally governed by the Administrative Record, including the relevant portions of the Plan, the parties propose that the conventional initial disclosure requirements do not apply to this matter. Defendant shall lodge with the Court and serve to Plaintiff on or before April 30, 2008 the Administrative Record, including relevant provisions of the Plan.

**8.     Discovery Plan:**

a.     **Plaintiff's Statement**:

Plaintiff requires discovery on the extent to which Bayer's general assets are used to fund the Plan as the Plan spends money to pay claims, and on the extent to which the physicians utilized by Bayer are biased, and whether the Plan trustees are biased.

b.     **Defendant's Statement**:

The Plan is funded through an irrevocable trust and, therefore, there is not even an

-4-

JOINT CASE MANAGEMENT CONFERENCE STATEMENT (CASE NO. C-07-06240 SI)

apparent "structural" conflict of interest (as between the Plan funder and administrator) on which to predicate extra-record discovery. Even were there to be the appearance of a structural conflict, however, there is no indication of an acted upon conflict which would justify the discovery of matters outside of the Administrative Record. Therefore, no discovery should be permitted.

**9.    Anticipated Motions:**

The parties anticipate that the matter may be disposed of on cross-motions for summary judgment. The parties request a hearing date for such motions in December, 2008. The parties shall meet and confer on the issue of discovery and inform the Court within 60 days whether the issue will need to be litigated.

**10.    Trial Estimate:**

The matter should be disposed of on cross-motions for summary judgment without the need for any trial time.

DATED: March 21, 2008                    LAW OFFICE OF JEROME SCHREIBSTEIN

                                         By:  _____/S/_____
                                         JEROME SCHREIBSTEIN
                                         Attorneys for Defendant
                                         BAYER CORPORATION DISABILITY PLANS
                                         (erroneously sued as BAYER CORPORATION
                                         DISABILITY PLAN)

DATED: March 21, 2008                    LAW OFFICES OF LAURENCE F. PADWAY

                                         By: _____/S/_____
                                         LAURENCE F. PADWAY
                                         Attorneys for Attorneys for Plaintiff ROSALIE
                                         MOOS-HOLLING